USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/27/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDER WILLIAMS,

                Plaintiff,

v.

ANTHONY ANNUCCI, MARIA VELARDO
and ERIC GUTWEIN,

                Defendants.

16-CV-7288 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Alexander Williams ("Plaintiff"), an inmate proceeding *pro se* and *in forma pauperis*,[1] commenced this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, by filing a complaint (the "Complaint") on August 31, 2016. (*See* Compl. (ECF No. 1).) Plaintiff alleges that Defendants Anthony Annucci ("Annucci"), Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), Sergeant Maria Velardo ("Velardo"), an employee of DOCCS, and Administrative Hearing Officer Eric Gutwein ("Gutwein") (collectively, "Defendants"),[2] violated his Fourteenth Amendment rights to due process during the course of his October 2015 disciplinary hearing ("Tier III Hearing"),[3] which resulted in his continued confinement in the Special Housing Unit. (*See* Compl. at 5-11.) Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) ("Defendants' Motion"). (*See*

---

[1] On October 5, 2016, this Court granted Plaintiff's request to proceed *in forma pauperis*. (*See* ECF No. 9.)
[2] On October 25, 2016, this Court dismissed Defendants Donald Venettozzi and Correction Officer Ernst from the case largely due to Plaintiff's inability to sufficiently allege their "direct and personal involvement in the alleged constitutional deprivation." (*See* Order of Service (ECF No. 12), at 1-2.)
[3] Title 7 of the New York Code Rules and Regulations ("7 N.Y.C.R.R.") codifies regulations regarding disciplinary hearings and promulgates a 3-tiered system of prisoner discipline. *See* 7 N.Y.C.R.R § 270.3. Tier III hearings relate to allegations of the "most serious violations of institutional rules", *see Walker v. Bates*, 23 F.3d 652, 654 (2d Cir. 1994), and can result in counseling, and/or reprimand, loss of privileges, extensive periods of confinement in the SHU, loss of good time, and/or restitution, *See* 7 N.Y.C.R.R § 254.7(a).

1

Defendants' Brief in Support of their Motion to Dismiss ("Defs. Br.") (ECF No. 27), at 1-4.) For the following reasons, Defendants' Motion is GRANTED.[4]

## FACTUAL BACKGROUND

The following facts are derived from the Complaint and the documents appended thereto; their truth is assumed for purposes of this motion only. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff is a *pro se* inmate who was housed at Green Haven Correctional Facility ("Green Haven") at the time of the alleged constitutional violations.[5] (*See* Compl. at 1.)[6] Plaintiff originally resided in general population until he was allegedly involved in a physical altercation with another inmate on October 6, 2015. (*Id.* at 6.) Immediately thereafter, Plaintiff was committed to the Special Housing Unit ("SHU"). (*Id.*) The claims asserted in this lawsuit stem from the hearings following his SHU confinement.

On October 8, 2015, while Plaintiff was confined in the SHU for his alleged physical altercation with another inmate, he was served with a misbehavior report charging various violations of prison rules (the "Misbehavior Report"). (*See id.* at 6, 9.) The Misbehavior Report charges Plaintiff with violations of correctional facility conduct rules, specifically sections 104.11-Violent Conduct, 104.13-Creating a Disturbance, 100.10-Assault on an Inmate, 100.13-Fighting, and 113.10-Weapon. (*Id.* at 9.) Thereafter, Plaintiff was provided an "Assigned Assistant", Defendant Velardo, (*id.* at 6), to help him develop a defense for his upcoming Tier III Hearing.

---

[4] This motion was unopposed by Plaintiff and deemed fully submitted on June 20, 2017. (*See* ECF No. 36.)
[5] Plaintiff was housed at Green Haven in October 2015. (*See* Compl. at 6-8.) He was then housed at Southport Correctional Facility ("Southport") for the subsequent hearing ("Rehearing"), (*see* Declaration of Donald Venettozzi in Support of Defendants' Motion dated April 18, 2017 ("Venettozzi Decl.") (ECF No. 28), ¶11, Ex. K), and at the time he filed the instant action. (*See* Compl. at 1.) In mid-October 2016, Plaintiff was transferred to Clinton Correctional Facility. (*See* ECF No. 11.) Around February 2017, Plaintiff was transferred to Auburn Correctional Facility in Auburn, New York, and then sent back to Southport in June of 2017. (*See* ECF Nos. 21, 34, 35, 37.) Plaintiff is currently incarcerated at Great Meadows Correctional Facility in Comstock, New York. (*See* NYS DOCCS Inmate Lookup Website, http://nysdoccslookup.doccs.ny.gov (DIN search term, "13A0182").
[6] As Plaintiff is proceeding *pro se* and his Complaint is the standard, fillable form Section 1983 complaint, all citations thereto will be to pages as identified on ECF, not paragraphs.

Plaintiff alleges that Velardo was wholly ineffective in that she failed to perform investigatory tasks, explain the charges to him, interview witnesses, and obtain documentary evidence or written statements as requested by him. (*See id.*)

Plaintiff's Tier III Hearing was comprised of a series of sessions conducted on three separate dates: October 9, 2015, October 22, 2015, and October 26, 2015. (*See* Compl. at 6, 7.) Defendant Gutwein presided over all three sessions. (*Id.* at 6-8.) During the first session, on October 9, 2015, Plaintiff informed Defendant Gutwein that his Assigned Assistant did not provide him "with all documentation needed to prepare" his defense. (*Id.* at 6.) Although Defendant Gutwein took note of Plaintiff's concerns, he did not provide him with a new Assigned Assistant and adjourned the hearing. (*Id.* at 6, 7.)

During the second session, Plaintiff's "requested witness" Officer Ernst[7] appeared to "present his chain of events." (*Id.* at 7.) Before Officer Ernst testified, Defendant Gutwein "slid a piece of paper" to Ernst "to read", to which Plaintiff "objected on [the] record." (*Id.*) Thereafter, Defendant Gutwein prohibited Plaintiff from questioning Officer Ernst, deeming Plaintiff's questions irrelevant; a finding that Plaintiff now contests. (*See id.*) Plaintiff contends that this conduct violated his right to due process. (*See id.*) After "cross examination was completed" the second session was then adjourned and Plaintiff was returned to his cell. (*Id.*)

Without notifying Plaintiff, on October 26, 2015, Defendant Gutwein commenced the third session. (*See* Compl. at 7.) Plaintiff, therefore, was not present for this session, during which time he alleges his witnesses gave testimony. (*Id.*) Plaintiff contends that proceeding with the final session in his absence constitutes a violation of his due process rights. (*See id.*) Furthermore, the

---

[7] Officer Ernst personally observed the alleged physical altercation between Plaintiff and another inmate that gave rise to the Misbehavior Report. (*See* Venettozzi Decl. ¶1, Exs. A, B.) The Complaint refers to him interchangeably as both Officer Erns and Officer Ernst. (*See* Compl. at 6-8.) The Court will refer to him as Officer Ernst throughout this Opinion.

3

third session occurred after the allotted time given to Defendant Gutwein to complete the Tier III Hearing, which Plaintiff alleges further violated his rights. (*See id*.) At the conclusion of the Tier III Hearing sessions, Gutwein found Plaintiff guilty on the charges in the Misbehavior Report (the "Tier III Decision"). (*See id.* at 8.) As a consequence, Plaintiff remained in the SHU for approximately 301 days and lost other privileges, such as good time credit.[8] (*See id* at 10.)

Plaintiff appealed the Tier III Decision to Defendant Annucci,[9] who affirmed the decision on December 22, 2015. (*See id*. at 8.) Subsequently, on July 1, 2016, Plaintiff filed an Article 78 petition in New York State Supreme Court, Albany County (the "Article 78 Court") challenging the Tier III Decision and its affirmance. (*See id* at 9.) The Article 78 Court ordered that the Tier III Decision be annulled without costs and directed respondents to conduct a rehearing on the matter because portions of the transcript from the Tier III Hearing were inaudible. (*See id.*) Plaintiff further states, "I have exhausted all remedies," but provides no further detail regarding whether he had any additional hearings. (*Id.*)

Though he makes no mention of additional hearings in his Complaint, Plaintiff was afforded a second hearing in August 2016 (the "Rehearing"), which produced the same sentence as the Tier III Hearing with credit for time served. (*See* Declaration of Donald Venettozzi in Support of Defendants' Motion dated April 18, 2017 ("Venettozzi Decl.") (ECF No. 28), ¶11, Ex. K.)[10] After Plaintiff commenced this action, he appealed the Rehearing determination, which was ultimately affirmed. (*See id.* ¶¶13, 14, Exs. M, N.)

---

[8] Plaintiff was sentenced to one year in the SHU as a result of the Tier III Hearing. (*See* Venettozzi Decl. ¶5, Exs. C, D.) Plaintiff's assertion that he had spent 301 days in SHU was presumably calculated as of the date he drafted the Complaint. (*See* Compl. at 10.)

[9] Defendant Annucci is the Acting Commissioner of DOCCS. Inmates are required to appeal the disposition of a Tier III disciplinary hearing to the DOCCS Commissioner or his designee within 30 days of receipt of disposition. *See* 7 N.Y.C.R.R. § 254.8.

[10] This Court may consider documents extrinsic to the Complaint for the purposes of exhaustion only as explained, *infra*, I.A.

**LEGAL STANDARD**

I. <u>**Rule 12(b)(6)**</u>

On a Rule 12(b)(6) motion to dismiss, a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements", or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pled allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Complaints of *pro se* Plaintiffs are to be treated with great solicitude and should be construed in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). They must be read "to raise the strongest arguments that they suggest." *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## II. Rule 12(b)(1)

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

## III. Section 1983 Claims

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, No. 10-CV-3937(DLC), 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012). A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his constitutional rights. *Ross*, 2012 WL 86467, at *9 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). Additionally, a plaintiff seeking monetary damages against the defendant must show personal involvement on the part of the defendant in the alleged constitutional deprivation as a prerequisite to recovery under

§ 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

## DISCUSSION

### I. <u>Exhaustion</u>

Defendants argue that Plaintiff's Complaint is ripe for dismissal for failure to exhaust. (*See* Defs. Br. at 13-16.) Specifically, Defendants contend that Plaintiff failed to exhaust his administrative remedies because he was provided a Rehearing after the Article 78 Court's determination, and had an opportunity, but failed, to appeal that decision before commencing this action. (*See id.* at 15-16.) This Court agrees.

Inmate plaintiffs are required to exhaust their administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") prior to initiating suit in federal court. *See* 42 U.S.C. § 1997e(a); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). The PLRA provides:

> 'No action shall be brought with respect to prison conditions under Section 1983 . . . or any other federal law . . . by a prisoner . . . until such administrative remedies as are available are exhausted.'

*Goldberg v. St. Barnabas Hospital*, No. 01-CV-7435(GBD), 2005 WL 426701, at *3 (S.D.N.Y. Feb. 22, 2005) (quoting PLRA). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust compels dismissal of federal claims. *Booth v. Churner*, 532 U.S. 731, 742 (2001). Nevertheless, a plaintiff's failure to exhaust does not end the review. *See Hemphill v New York*, 380 F.3d 680, 686, 691 (2d. Cir. 2004). Before a court may dismiss a prisoner's complaint, it is "obligated to establish the availability of an administrative remedy [not pursued by the

7

prisoner] from a legally sufficient source." *Mojias v. Johnson*, 351 F.3d 606, 609 (2d Cir. 2003) (quoting *Snider v. Melindez*, 199 F.3d 108 (2d Cir. 1999)). Where remedies were available,

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Kimbrough v. Fischer*, No. 13-CV-0100(FJS)(TWD), 2014 WL 12684106, at *7 (N.D.N.Y. Sept. 29, 2014) (quoting *Hemphill*, 380 F.3d at 686 (citations omitted), *report and recommendation adopted by*, 2016 WL 660919 (Feb. 18, 2016).[11]

As articulated *supra*, exhaustion is an affirmative defense, not a pleading requirement; thus, inmate plaintiffs need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199 (2007). Instead, defendants must demonstrate lack of exhaustion. *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009)). Furthermore, because exhaustion does not need to be pled and may be waived, *see Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002), it is not a jurisdictional requirement, *see Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003), and is thus more suited for consideration on a 12(b)(6) motion, not a 12(b)(1) motion.

---

[11] Where remedies are available to an inmate and exhaustion has not been waived, some courts have considered whether special circumstances have been plausibly alleged which might justify an inmate's failure to comply with the administrative requirements. *See Giano v. Goord*, 380 F. 3d 670, 678 (2d Cir 2004). The Supreme Court, however, has held that a court may not excuse an inmate's failure to exhaust administrative remedies prior to bringing suit under the PLRA, even to take special circumstances into account. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (holding that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.")

### A. Documents to Consider

In support of their exhaustion argument, Defendants provide the following documents for this Court's consideration: the appeal of the Tier III Hearing to the Commissioner of DOCCS and the disposition of said appeal, Plaintiff's Article 78 Petition and resulting order, the Rehearing transcript and decision, Plaintiff's appeal of the Rehearing to the Commissioner of DOCCS, and the disposition of that appeal. (*See* Venettozzi Decl. ¶¶ 6, 8, 11, 13-14, Exs. E-G, K, M, N.) None of these documents were attached to the Complaint or can be considered integral to the Complaint. Nevertheless, in accordance with the following, the Court will consider these documents on the issue of exhaustion alone.

Dismissal on a 12(b)(6) motion for failure to exhaust is permissible where "it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams*, 829 F.3d at 122; *see also Parris v. N.Y.S. Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 261 (S.D.N.Y. 2013) (citing *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10-CV-6309(JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) for proposition that denial of motion appropriate where complaint ambiguous as to exhaustion). Moreover, where a court is confined to the four corners of the complaint, the documents attached thereto, and things of which it is entitled to take judicial notice, *see, e.g., Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011), it is only permitted to consider outside documents related to exhaustion under limited circumstances, *see Smith v. Miller*, No. 15-CV-9561(NSR), 2017 WL 4838322, at *5 (S.D.N.Y. Oct. 23, 2017) (noting courts can take judicial notice of administrative records in Section 1983 cases in limited circumstances). Those include instances where "the complaint 1) was the standard *pro se* form complaint that has a check-box regarding exhaustion, 2) contained allegations clearly stating that the inmate had exhausted his

administrative remedies, or 3) clearly pointed to the fact that the inmate had, in fact, not exhausted." *Colon*, 2017 WL 4157372, at *5.

Here, Plaintiff explicitly states: "I have exhausted all remedies," (Compl. at 9), which fits squarely into the second category articulated above. Therefore, this Court may properly consider the documentary evidence provided by Defendants.

### B. Failure to Exhaust

Substantively, Defendants argue that Plaintiff's failure to appeal the decision on the Rehearing before filing his Complaint in federal court is detrimental to his lawsuit. (*See* Defs. Br. at 13-16.) This Court agrees.

After the Supreme Court, Albany County vacated the Tier III Decision and ordered a rehearing, record of the annulled hearing was expunged, and Plaintiff was given that Rehearing. (*See* Venettozzi Decl. ¶¶ 8, 11, Exs. G, K.) The Rehearing resulted in effectively the same sentence[12]—one year in the SHU with credit for time served,[13] in addition to loss of good time credit and other privileges. (*Id.* ¶11, Ex. K, at 51-55.) After the Rehearing was held, but prior to appealing the determination, Plaintiff filed this action on August 31, 2016. (*See* ECF No. 1; *see also* Venettozzi Decl. ¶¶13, 14, Exs. M, N.) Plaintiff ultimately appealed the Rehearing decision in early September 2016 (after his federal complaint was filed), which decision was affirmed in November 2016. (*See id.*) It is patently clear that Plaintiff had administrative remedies available to him that he did not exercise when he filed his Complaint before this Court. Lack of exhaustion is apparent.

---

[12] Although the sentence was the same one imposed at the Tier III Hearing with credit for time served, Plaintiff was found not guilty on the count of Creating a Disturbance. (*See* Venettozzi Decl. ¶11, Ex. K, at 52.)
[13] At the time of his second sentence, Plaintiff had already served 330 days in the SHU, from October 6, 2015 to August 31, 2016. (*See* Venettozzi Decl. ¶11, Ex. K, at 51-55.)

"[E]xhaustion serves a myriad of purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and . . . allow[ing] the agency to develop the factual record of the case." *Aikens v. Jones*, No. 12-CV-1023(PGG), 2015 WL 1262158, at *3 (S.D.N.Y. Mar. 19, 2015) (internal quotations omitted). In order to exhaust, "'a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review' before filing suit." *See McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (quoting *Porter v. Goord*, No. 01-CV-8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002). To exhaust administrative remedies under the PLRA, inmates are required to complete the administrative appeal process in accordance with rules of the particular institution in which they are confined. *Johnson v. Killian*, 680 F.3d 234,238 (2d Cir. 2012).

New York's grievance process is known as the Inmate Grievance Program ("IGP"). *See Rodney v. Goord*, No. 00-CV-3724(WK), 2003 WL 21108353, at *4 (S.D.N.Y. May 15, 2003). This process provides a three-tiered formal procedure for all grievances. (*Id.*); *see also* 7 N.Y.C.R.R. § 701.5 (2013). First, an inmate must submit a grievance detailing the problem, the actions requested, and the actions the inmate has taken to resolve the complaint to the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.7(a)(1)(i). The ICGR then reviews and investigates the grievance and renders a decision related thereto. *Id.* Second, the inmate has the option of appealing the IGRC's decision to the superintendent, who either affirms or reverses the IRGC's decision. *Id.* Third, the inmate may appeal an unfavorable determination to the Central Office of Review Committee ("CORC") that makes the final administrative determination. *See Khalild v. Reda*, No. 00-CV-7691(LAK)(GWG), 2003 WL 42145, at *3 (S.D.N.Y. Jan. 23, 2003) (internal citations omitted); 7 N.Y.C.R.R. § 701.7 (a)-(c).

The procedure for exhaustion of claims related to disciplinary hearings, however, is different. "[W]hen an inmate's federal claims arise directly out of a disciplinary or administrative

segregation hearing . . . he exhausts his administrative remedies by presenting his objections in the administrative appeals process." *Thomas v. Kinderman*, No. 17-CV-00425(DNH)(TWD), 2017 WL 8293605, at *3 (N.D.N.Y. Dec. 4, 2017), *report and recommendation adopted by*, 2018 WL 1441336 (Mar. 22, 2018) (internal citations omitted); *see also* 7 N.Y.C.R.R. § 701.3(e)(1)-(2) (results of disciplinary hearings are non-grievable). The administrative appeals process calls for the inmate to appeal the disposition to the Commissioner of DOCCS, who may then affirm, reverse, remand or modify the determination made at the hearing. *See* 7 N.Y.C.R.R. § 254.8 (a)-(d); *see also Jenkins v. Haubert*, 179 F.3d 19, 23 n.1 (2d Cir. 1999) (holding that disciplinary appeals exhausted plaintiff's challenge to the resulting disciplinary sanctions). Moreover, "[w]here an inmate claims both that there was official misconduct in the events leading up to the disciplinary hearing and that the hearing itself was constitutionally fl[a]wed, he must follow both DOCCS procedures." *Kimbrough*, 2014 WL 12684106, at *6.

Though, exhaustion is usually complete where a plaintiff files an appeal of his disciplinary hearing, in this case, Plaintiff's exercise of this step and the grant of a Rehearing by the Article 78 Court, bring his conduct outside of the norm. Critical to the exhaustion analysis, as it pertains to disciplinary hearings, is whether a plaintiff "pursu[ed] an appeal of the disciplinary conviction and receiv[ed] a **final** decision from . . . the Commissioner's designee." *See id.* (emphasis added). In *Kimbrough*, the Court found as much because plaintiff filed an Article 78 proceeding that resulted in an order expunging "the disciplinary conviction, restor[ing] all of Plaintiff's privileges, and restor[ing] Plaintiff's good time credits." *See id*. While Plaintiff also brought an Article 78 proceeding which resulted in an expungement of his Tier III Hearing, unlike in *Kimbrough*, the

court directed that a rehearing take place, largely because the recordings of the Tier III Hearing were inaudible. (*See* Compl. at 9; Venettozzi Decl. ¶9, Ex. H.)[14]

Proper exhaustion required Plaintiff to appeal his Rehearing decision. Where a Tier III Hearing's affirmance is reviewed by an Article 78 court that then grants a rehearing, that rehearing attaches as an additional due process procedure that is interconnected to the original Tier III Hearing. *See Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (noting that a rehearing becomes part of the due process chain, which can ultimately cure violations arising from the original Tier III Hearing). Consequently, a rehearing can be used to assess the sufficiency of due process afforded in the Tier III Hearing and thus constitutes another step in the exhaustion analysis. Once the rehearing takes place, since it is interconnected to the original Tier III Hearing, exhaustion is not completed until the rehearing is appealed to the DOCCS Commissioner, just as would be required of any Tier III Hearing determination standing alone. *See Matter of Dagnone v. Goord*, 298 A.D.2d 789, 790 (2002) (holding that judicial review of a hearing officer's determination of Tier III Hearing, filed while petitioner's administrative appeal of the rehearing was still pending, was properly dismissed as premature because petitioner had not received a final administrative decision) Here, Plaintiff was afforded a Rehearing, and indeed appealed that Rehearing's determination and received a final decision from DOCCS, but only after he initiated this lawsuit, thus leaving a step unexhausted.

The fact that Plaintiff ultimately did file an appeal of the Rehearing on September 8, 2016 and received a decision thereafter fails to cure the exhaustion defect. Exhaustion defects are fatal

---

[14] "New York law recognizes that an appeal of a disciplinary hearing requires, for preservation purposes, that the inmate raise the particular objections he has to the disciplinary hearing either during the hearing itself or on appeal." *Khalild*, 2003 WL 42145, at *4 (internal citations omitted). The hearing transcripts from the Tier III Hearing, and Plaintiff's administrative appeal articulate the numerous ways Defendants allegedly violated Plaintiff's constitutional rights as raised in the Complaint, and therefore would ordinarily have exhausted Plaintiff's claims had Plaintiff not been granted a rehearing, or alternatively had Plaintiff filed suit before the Rehearing occurred and new administrative remedies became available. (*See* Venettozzi Decl. ¶¶5, 6, Exs. C, E.)

flaws that can only be addressed through re-filing of the complaint rather than an amendment; otherwise, "allowing prisoner suits to proceed . . . [would] undermine[] Congress' directive to pursue administrative remedies *prior* to filing a complaint in federal court . . . [and] if the administrative process were to produce results benefiting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system." *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir.2001) (emphasis added), *overruled on other grounds by Porter*, 534 U.S. at 516. Plaintiff has failed to properly exhaust.[15]

### C. Availability and Waiver of Exhaustion

"[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). In the context of the PLRA, "'availability' means that 'an inmate is required to exhaust . . . only those grievance procedures that are capable of use to obtain some relief for the action complained of.'" *Kinderman*, 2017 WL 8293605, at *4 (quoting *Ross*, 136 S.Ct. at 1859). *Ross* expressly rejected the broad special circumstances analysis originally articulated by the Second Circuit, which considered "all particulars of a case" such as those that might understandably or justifiably lead an uncounseled prisoner to fail to comply with the administrative procedural requirement, *Ross*, 136 S.Ct. at 1855-58, and thereby narrowed judicial discretion related to the PLRA's mandatory exhaustion regime. Notwithstanding the

---

[15]This Court notes that Defendant Velardo's allegedly impermissible conduct occurred prior to the hearing itself. While some courts have held that pre-hearing conduct should be grieved separately through the IGP, *see Rivera v. Goord*, 253 F. Supp. 2d 735, 750 (S.D.N.Y. 2003) (collecting cases demonstrating failure to exhaust, despite appeal of a disciplinary hearing decision, where the alleged conduct did not occur at the hearing itself), those cases only apply where the pre-hearing conduct amounts to a separate substantive claim. *See Samuels v. Selsky,* No. 01-CV-8235(AGS), 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002) (finding that "issues directly tied to the disciplinary hearing which have been directly appealed need not be appealed again collaterally"); *Thomas*, 2017 WL 8293605, at *4 ("[W]hen an inmate presents a claim arising "directly out of a disciplinary or administrative segregation hearing . . . (e.g., a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal") (internal quotation marks and citations omitted). As Plaintiff's claims against Velardo relate to his due process claims, and not a separate substantive claim, IGP grievance procedures were not required.

explicit overruling of the "special circumstances exception", the Supreme Court emphasized the exceptions to exhaustion contained in the PLRA itself. An administrative remedy, though it exists formally, is functionally unavailable:

> (1) ("when (despite what regulations or guidance material may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief"; (2) when an "administrative scheme might be so opaque that it becomes practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id*. at 1859-60. The circumstances noted above "will not often arise[, b]ut where one (or more) does, an inmate's duty to exhaust 'available' remedies does not come into play." *Id*. at 1859.

Plaintiff's case does not fall into any of the circumstances articulated in the PLRA in which an inmate's duty to exhaust available remedies would not come into play. Plaintiff had a remedy available to him – the appeal of his Rehearing – of which he failed to avail himself before initiating a federal action. His subsequent appeal and obtainment of a final decision by the DOCCS which resulted in the same punishment, but a change in ruling on at least one charge, (*see* Venettozzi Decl. ¶11, Ex. K, at 52), vitiates any claim that Plaintiff may have that the remedy would "operate[] as a simple dead end", *Ross* 136 S.Ct. at 1859-60, or that any "prison administrators twart[ed]" his ability to take this step, *id.* The Court need not linger on this issue, however, as Plaintiff has not alleged that any failure to exhaust was due to interference by Defendants or other prison staff. Moreover, though 7 N.Y.C.R.R. § 254.8 does not explicitly state that when a rehearing is provided, the inmate must then appeal the rehearing determination to the DOCCS Commissioner in order to properly exhaust his claims, it cannot be said that the administrative scheme is "so opaque that . . . no ordinary prisoner can discern or navigate it," because the regulation explicitly states that all Tier III Hearing determinations must appealed to the Commissioner. *Id*. at 1859-60; *see also White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order) (grievance process was

not so opaque so as to make it unavailable, where the facility's statute plainly stated how to grieve a specific claim, but did not explicitly address recourse for grieving said conduct when it is repetitive or continuous). Indeed, Plaintiff's conduct indicates that he understood as much because he appealed, not only the original Tier III Hearing determination, but the Rehearing determination as well. (*See* Compl. at 8; Venettozzi Decl. ¶ 6, Ex. E.)

Finally, Defendants have not waived their right to assert failure to exhaust as their affirmative defense. Exhaustion defects may be overlooked where "defendants [] have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it" or where defendants' "own actions inhibit[ed] the [prisoner's] exhaustion of remedies". *Hemphill*, 380 F.3d at 686 (internal citations omitted). Neither situation is applicable here: Defendants' first response to the Complaint was this Motion wherein they argued that Plaintiff failed to exhaust, (*see* EFC No. 26); therefore, Defendants preserved exhaustion as a defense. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) (affirmative defense properly raised on promptly filed Rule 12(b)(6) motion in lieu of answer). Further, there is no indication from Plaintiff's Complaint that he was prevented from pursuing any administrative remedies by the Defendants own actions, indeed his conduct post initiation of this lawsuit demonstrates to the contrary. The defense of exhaustion was not waived.

Defendants' Motion is granted. Plaintiff is otherwise permitted to initiate a new action against the Defendants in light of his post-Rehearing actions.[16]

---

[16] In New York, the statute of limitations for bringing claims against state or local officials under 42 U.S.C. § 1983 is 3 years. *See* 42 U.S.C. § 1983; *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Plaintiff's claims arise out of a hearing that took place over the course of three days in October 2015, well within the 3 year statute of limitations. Plaintiff would not be barred from re-asserting these claims.

## II. Personal Involvement

Though the Court grants Defendants' Motion on exhaustion grounds, it will nevertheless consider whether or not Plaintiff has properly pled personal involvement on the part of Defendant Annucci.

Plaintiffs must properly allege personal involvement of each of the individual defendants. *Iqbal,* 556 U.S. at 676; *see also Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (enumerating ways an individual defendant allegedly may have violated the Constitution). Where, as here, the defendant occupied a supervisory role, he "may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996). Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added), *cert. denied sub nom. Brooks v. Pataki*, 137 S.Ct. 380 (2016).

The Complaint's only reference to Defendant Annucci is a single reference, that after reviewing Plaintiff's administrative appeal, he affirmed the Tier III Decision on December 22, 2015. (*See* Compl. at 8.) Plaintiff fails to provide this Court with a copy of his appellate record before Annucci, details about its contents, or any explanation of the manner in which Annucci allegedly violated his due process rights.[17] The record is completely devoid of any connection between Annucci and Plaintiff's alleged due process violations; consequently, personal involvement has not been adequately pled and Plaintiff's claims cannot withstand even the most

---

[17] The Court cannot consider the documents attached to the Venettozzi declaration for purposes of whether Plaintiff has properly pled cognizable causes of action against the Defendants'; those documents were considered for the narrow issue of exhaustion only.

generous facial review under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555 (finding the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements); *Dow Jones & Co. v. International Securities Exchange, Inc.*, 451 F.3d 295, 307 (2d Cir.2006) (a complaint that "consists of conclusory allegations unsupported by factual assertions . . . fails even the liberal standard of Rule 12(b)(6)"). The motion is granted in this regard as well.

### III.     Eleventh Amendment

Defendants also move to dismiss all claims asserted against them in their official capacity. (*See* Defs. Br. at 14.) This portion of the motion is likewise granted. Absent abrogation by Congress, a state is immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-56 (1996); *see also Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990). This immunity extends to "arms of the state," which includes "officers employed by agencies such as" the DOCCS. *Dube*, 900 F.2d at 594-95 (finding SUNY institution entitled to sovereign immunity); *see also Matteo v. Perez*, No. 16-CV-1837(NSR), 2017 WL 4217142, at *7 (S.D.N.Y. Sept. 19, 2017). Section 1983 claims against state officers in their official capacity are ripe for dismissal, as those officials are not considered "person[s] within the meaning of the statute." *Id.* (citing *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *Koehl v. Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996) for proposition that Section 1983 claims based on official capacity barred by sovereign immunity). Consequently, the Fourteenth Amendment claims against the Defendants in their official capacity cannot stand and are dismissed with prejudice. Should Plaintiff initiate a

new suit against the Defendants, he should refrain from asserting claims against them in their official capacities.[18]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss the Complaint in its entirety is GRANTED without prejudice on the threshold issue of exhaustion. All claims asserted as against the Defendants in their official capacity are dismissed with prejudice. All claims as asserted against Defendant Annucci in his individual capacity are dismissed without prejudice due to lack of personal involvement. Given the Plaintiff's Complaint was dismissed due to failure to exhaust, his remedy is to commence a new action consistent with this order. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 26 and terminate the action. The Clerk of the Court is further respectfully requested to mail a copy of this Opinion & Order to Plaintiff's address as listed on ECF and show proof of such mailing on the docket.

Dated: June 27, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[18] Defendants also argue that they are entitled to qualified immunity. (*See* Defs. Br. at 24, 25.) In light of this Court's determination that Plaintiff's Complaint should be dismissed in its entirety on the basis of lack of exhaustion, this Court declines to consider the question of qualified immunity. The Court likewise declines to consider the arguments with respect to Plaintiff's substantive claim for violations of due process, as this Court cannot consider the merits of this case in light of Plaintiff's failure to exhaust.